**CITICORP VENDOR FINANCE, INC. fdba Copelco Capital, Inc.—Machine Tool Division, Plaintiff,**

v.

**WIS SHEETMETAL, INC., a/k/a WIS Sheet Metal, Inc., William Summers, Connie L. Summers, and April Summers, Defendant.**

No. IP 01–1067–C–B/S.

United States District Court,
S.D. Indiana,
Indianapolis Division.

June 18, 2002.

R. Brock Jordan, Rubin & Levin PC, Indianapolis, IN, for Plaintiff.

James A. Knauer, Kroger Gardis & Regas, Indianapolis, IN, Jeffrey M. Miller, Noel & Noel, Kokomo, IN, for Defendant.

## *ENTRY GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

BARKER, District Judge.

This matter comes before the Court on Plaintiff Citicorp's Motion for Summary Judgment. Citicorp contends that Defendant WIS is in breach of a finance lease and four lease addenda; that Defendants William Summers, Connie L. Summers, and April Summers are in breach of personal guaranties of all sums due from WIS to Citicorp; and that Defendants are jointly and severally liable to Citicorp for the damages stipulated in the lease agreement. For the reasons set forth below, the Court *grants in part* and *denies in part* Plaintiff's Motion for Summary Judgment.

### *Factual Background* [1]

On January 20, 2000, Plaintiff Citicorp Vendor Finance, Inc. ("Citicorp") and Defendant WIS Sheetmetal, Inc. ("WIS") entered into a finance lease (the "Lease Agreement") for equipment. (Complaint ¶ 9.) On May 12, 2000, Citicorp and WIS entered into four lease addenda (the "Lease Addenda") for additional equipment. (*Id.* ¶ 11.) WIS received and acknowledged receipt of all equipment described in the various leases. (*Id.* ¶¶ 10, 12.) On January 13, 2000, and May 12, 2000, William Summers, Connie L. Summers, and April Summers (collectively the "Summerses") gave Citicorp personal guaranties of all sums due from WIS to Citicorp. (*Id.* ¶ 25.) Beginning in July 2000, WIS stopped making the required monthly rental payments, and the Summerses failed to pay the amounts due to Citicorp by WIS. (*Id.* ¶¶ 13, 27.) On July 23, 2001, Citicorp filed suit for breach of contract, requesting that WIS and the Summerses be held jointly and severally liable to Citicorp for the following amounts

---

1. Defendants did not provide a Response to Statement of Material Facts as required by Local Rule 56.1(f). Accordingly, the Court "will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy ..." S.D.Ind.L.R. 56.1(g); *see Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921–22 (7th Cir.1994) (listing cases upholding the "strict enforcement" of Local Rule 56.1); *Little v. Cox's Supermarkets,* 71 F.3d 637, 640 (7th Cir.1995) (discussing application of Local Rule 56.1.).

stipulated in the "Default and Remedies" section of the Lease Agreement: $240,786.00 for unpaid rental payments and late charges from July 2000 to May 2001; interest on the unpaid rental payments and late charges at 16% per annum from June 1, 2000; $1,320,357.24 for the entire unpaid balance of rental payments for the unexpired terms of the Lease Agreement and Lease Addenda, discounted to the date of default at 4% per annum; attorney fees equal to 20% of the total unpaid rental for the balance of the lease term; plus all expenses of repossessing, storing, shipping, repairing and/or selling the equipment at issue. On September 14, 2001, Citicorp moved for summary judgment on the breach of contract claim.

## Standard of Review

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The mere existence of a factual dispute will not bar summary judgment unless "the disputed fact is outcome determinative under governing law." *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.1983). When a summary judgment motion is made and supported by accompanying affidavits, the party opposing summary judgment may not rely on

the mere allegations of his pleadings. Rather, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994) (quoting Fed. R.Civ.P. 56(e)). In considering a motion for summary judgment, a court must review the record and draw all reasonable inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Del Raso v. U.S.*, 244 F.3d 567, 570 (7th Cir.2001). If the party opposing the motion does not present evidence that would permit the finder of fact to find in his favor on a material question, then the court must enter summary judgment against him. *Waldridge*, 24 F.3d at 920, *citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson*, 477 U.S. at 249–52, 106 S.Ct. 2505.

## Legal Analysis

Citicorp argues that WIS is in breach of the Lease Agreement and Lease Addenda, that the Summerses are in breach of their personal guaranties, that the language of the contracts is clear and unambiguous, and that Citicorp is therefore entitled to the damages stipulated in the Lease Agreement.[2] WIS asserts that Citicorp has failed to prove that the default interest rate and the attorney fees are reasonable under the circumstances and that summary judgment is therefore inappropriate on the issue of whether the two clauses are enforceable damage provisions.[3] Our jur-

---

**2.** Although the Summerses did not respond to Citicorp's motion, Rule 56(e) permits judgment for the moving party only "if appropriate," that is, only if the standard for summary judgment is met. *Tobey v. Extel/JWP, Inc.*,

985 F.2d 330, 332 (7th Cir.1993). Therefore, the Court's decision as to Citicorp's motion applies equally to WIS and to the Summerses.

**3.** WIS does not challenge the remainder of the damage provision, thereby conceding that

isdiction over this case is based on diversity of citizenship, and as such, Indiana substantive law controls. *Fidelity and Guar. Ins. Underwriters, Inc. v. Everett I. Brown Co., L.P.,* 25 F.3d 484, 486 (7th Cir.1994).

 The question of whether a contract provision for damages is unenforceable as a penalty is a question of law solely for the court to resolve. *A.V. Consultants, Inc. v. Barnes,* 978 F.2d 996, 1001 (7th Cir.1992) (applying Indiana law); *Mandle v. Owens,* 164 Ind.App. 607, 330 N.E.2d 362, 364 (1975). Liquidated damages will be enforced as a remedy where "actual damages are uncertain or difficult to ascertain or prove or are of a purely speculative character and the contract furnishes no data for their ascertainment." *Raymundo v. Hammond Clinic Ass'n,* 449 N.E.2d 276, 283 (Ind.1983) (*quoting Beiser v. Kerr,* 107 Ind.App. 1, 20 N.E.2d 666, 669 (1939)). Under such circumstances, Indiana courts enforce liquidated damages provisions provided that "the sum contracted to be paid does not appear to be unreasonable in amount." *Raymundo,* 449 N.E.2d at 283; *see also A.V. Consultants,* 978 F.2d at 1001 (applying Indiana law and stating that Indiana "recognizes the validity of contractual provisions for liquidated damages where damages are hard to calculate and the liquidated damages themselves are not unreasonable."). In determining whether a contract provision constitutes liquidated damages or an unenforceable penalty, we consider the surrounding facts, the intention of the parties, and the reasonableness of the stipulation under the circumstances of the case. *Gershin v. Demming,* 685 N.E.2d 1125, 1128 (Ind.Ct.App.1997).

*Interest Rate*

WIS's opposition to the 16% default interest rate rests on the recent Indiana case, *Art Country Squire v. Inland Mortgage Corp.,* 745 N.E.2d 885 (Ind.Ct.App. 2001), in which the Court of Appeals ruled that summary judgment was inappropriate on the issue of whether a loan provision raising the interest rate from 10.75% to 18% upon default was an enforceable damage provision. Inland argued in support of its motion for summary judgment that the default interest rate provision should be deemed, as a matter of law, to be an enforceable damage provision, rather than an unenforceable penalty provision, because

(1) the provision arose from negotiations between sophisticated and experienced real estate investors who were represented by counsel in an "arm's length fully-negotiated transaction"; (2) the provision was reaffirmed in the various additional documents; (3) the default rate is below the usury rate for consumer loans; (4) there is no usury rate for commercial loans; and (5) the increased rate was necessary to compensate for the time bank officers spent dealing with the default.

*Id.* at 891–92. The court explained that although the determination of whether a provision is a liquidated damages clause or a penalty is a question of law, "it may require resolution of underlying factual issues." *Id.* at 891. The court further ruled that Inland's arguments were insufficient to establish that the default interest rate was reasonable under the circumstances as a matter of law, that Inland had produced no evidence that the additional interest was proportionate to the expected damages, and that under such circumstances

Citicorp is entitled to the other damages requested. *See* S.D.Ind.L.R. 56.1(g). Accordingly, summary judgment is *granted* as to the past due rental payments, late fees, and the unpaid balance of rental payments under the Lease.

summary judgment was inappropriate. *Id.* at 892.

■ Similarly, in the present case, Citicorp's support for the interest rate is based solely on the language of the Lease Agreement itself, which states that the parties agree that the provisions of the "Default and Remedies" "represent an agreed measure of damages and are not to be deemed a forfeiture or penalty." (Complaint, Ex. A, p. 2, ¶ 13). However, when interpreting a contract provision, the use of the words "damages," "penalty," "forfeiture," and "liquidated damages" is not necessarily determinative. *Mandle*, 330 N.E.2d at 364–65; *see also Merrillville Conservancy District v. Atlas Excavating, Inc.*, 764 N.E.2d 718, 724 n. 3 (Ind.Ct.App. 2002) (noting that interpretation of a contract provision cannot be controlled by erroneous labels, including the erroneous use of the term "liquidated damages," but instead the court must look through form to substance). In the absence of any evidence that the interest rate is proportionate to the expected damages and therefore reasonable under the circumstances, we cannot say that Citicorp is entitled to 16% interest on the back payments and late fees as a matter of law. Accordingly, Citicorp's motion as to the default interest rate provision is *denied.*

### Attorney's Fees

WIS argues that Citicorp is precluded from recovering attorney's fees calculated as a percentage of the unpaid rental under the Lease Agreement by the ruling in *Waxman Indus., Inc. v. Trustco Dev. Co.*, 455 N.E.2d 376 (Ind.Ct.App.1983). The court in *Waxman* found that a lease provision stating that the lessee would be responsible for "reasonable attorney fees" upon default could not be invoked to require the lessee to pay fees based upon a contingent fee contract between the lessor

and its attorney. *Id.* at 382. *Waxman* is distinguishable from the case at bar, however, because here the Lease Agreement attempts to define in advance how "reasonable" fees will be calculated without reference to the fee agreement between Citicorp and its counsel.

■ Despite the inapplicability of the case on which WIS bases its challenge to the attorney fee provision, however, the Court finds the provision to be an unenforceable penalty. "Where the sum sought to be fixed as liquidated damages is grossly disproportionate to the loss which may result from the breach, the courts will treat the sum as a penalty rather than as liquidated damages." *Gershin*, 685 N.E.2d at 1127. The attorney fee provision in question is not tailored to approximate the damages to occur in the event of a breach and compensate that loss. Enforcement of the clause of Citicorp's Lease Agreement would award Citicorp $264,071.44 for attorney's fees without evidence establishing any connection to actual expenses incurred, an outcome that is patently unreasonable.

Other courts faced with similar situations have come to the same conclusion. *See, e.g. Heller Financial, Inc. v. Burry*, 633 F.Supp. 706, 707 (N.D.Ill.1986) (refusing to enforce an equipment lease provision that set "reasonable attorney fees" at 20% of the amounts sought to be collected because "any floor on 'reasonable' fees automatically geared in percentage terms to the amount of the delinquency smacks of unreasonableness from its very nature"). As Citicorp has presented no evidence upon which the Court could find the attorney fee provision to be reasonable as a matter of law, summary judgment is inappropriate. Accordingly, Citicorp's Motion as to the award of attorney's fees is *denied.*

*Conclusion*

Citicorp has moved for summary judgment, arguing that both WIS and the Summerses are in breach of their obligations and that Citicorp is therefore entitled to damages as stipulated in the Lease Agreement. WIS has opposed only the reasonableness of the default interest rate and attorney fee damage provisions as a matter of law. As explained above, we find that 1) WIS has not disputed the damage provisions regarding the back payments and late fees or the unpaid balance under the Lease Agreement and those amounts therefore are payable by WIS to Citicorp; 2) Citicorp has adduced no evidence to establish that the default interest rate is reasonable as a matter of law; and 3) the attorney fee provision is an unenforceable penalty. Accordingly, we *grant in part* and *deny in part* Citicorp's motion for summary judgment.