**Phyllis GADDIS, Appellant–Defendant,**

v.

**STARDUST HILLS OWNERS ASSOCIATION, INC., Appellee–Plaintiff.**

**No. 67A01–0309–CV–347.**

Court of Appeals of Indiana.

March 4, 2004.

Richard Lorenz, Hickam & Lorenz, Cloverdale, IN, Robert C. Price, Price & Runnells, Bloomington, IN, Attorneys for Appellant.

Barbara Webb Clements, Stewart & Irwin, P.C., Indianapolis, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Phyllis Gaddis appeals the small claims judgment entered against her and in favor of appellee-plaintiff Stardust Hills Owner's Association, Inc. (Association), a non-profit Indiana corporation. Specifically, Gaddis contends that the delinquent fee charged for late payment of membership dues constitutes usurious interest, and, in the alternative, that the delinquent fee is an unenforceable penalty.[1] Finding that the delinquent fee is neither usurious interest nor a penalty, we affirm.

### FACTS

According to the Association's bylaws, every homeowner in the Putnam County subdivision known as Stardust Hills must be a member of the Association, and he must pay annual dues. The Association assesses $200 per year of dues for the maintenance of common areas and other community services. There is a ten-day grace period for payment, after which the amount of the unpaid annual obligation "shall bear a delinquent fee at a rate of $2.00 per day from the date of said delinquency." Appellant's App. p. 125. The rules and regulations of the Association further provide that "[t]he Association will take legal action to place a lien on each and every property for which payment is not made by the designated time," and "[a]ny Member . . . who defaults in payment of an obligation due to the Association will be responsible for all attorney fees and any other reasonable costs of collection incurred by the Association in the collection of such amounts, all without relief from valuation or appraisal laws." Appellant's App. p. 125.

Gaddis owned one lot in Stardust Hills in her own name, and apparently held joint title with her husband to another lot in the

---

1. Gaddis's brief does not contain a statement of the issues. These are the issues as we understand them based on the arguments presented in Gaddis's brief. We remind counsel that Appellate Rule 46(A)(4) requires a statement of the issues that "concisely and particularly describe[s] each issue presented for review."

neighborhood. Gaddis did not pay on time the annual dues on the lot that she owned in her name only. Twenty-one days and forty-two dollars in delinquent fees after the payment was due, Gaddis signed an agreement with the Association that she would pay her dues in installments on the first of each month. The contract also stated, "If I fail to pay the balance within 10 days, I will be subject to late charges and if I still do not pay, the matter will be filed in small claims court, and all court costs will be added to my balance." Appellant's App. p. 5. At the time she signed the contract, Gaddis also paid $100 of her annual dues. Gaddis failed to make any of the scheduled payments, and, after the first installment was due, the Association resumed charging the per diem late fee on June 12, 2002.

On August 2, 2002, the Association filed a small claim action against Phyllis for non-payment of her annual dues. The trial was held on April 4, 2003, and the trial court entered judgment against Gaddis finding, "that Plaintiff has met its burden of proof and [the court] enters judgment in its favor and against Defendant in the amount of $58.00 plus $42.00 court costs for a total judgment of $100.00. Defendant's counterclaim is denied. The Clerk of the Court is ordered to remit to Plaintiff the sum of $142.00 held in trust."[2] Gaddis now appeals.

## DISCUSSION AND DECISION

### I. Usurious Interest

Gaddis first contends that the delinquent fee at issue is usurious interest.

Specifically, she contends that the Association essentially charges one percent interest per day in perpetuity for unpaid dues, which is against public policy and is in excess of the statutorily allowed interest rate for loans.

■ Initially, we note that "judgments in small claims actions are 'subject to review as prescribed by relevant Indiana rules and statutes.'" *Wehry v. Daniels,* 784 N.E.2d 532, 534 (Ind.Ct.App.2003) (quoting S.C.R. 11(A)). When reviewing claims tried by the bench without a jury, we will not set aside the judgment "unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *Id.* (quoting T.R. 52(A)). In determining whether a judgment is clearly erroneous, we neither reweigh the evidence nor assess the credibility of witnesses. *Id.* Rather, we look to the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.*

■ A judgment in favor of a party having the burden of proof will be affirmed if the evidence was such that a reasonable trier of fact could conclude that the elements of the party's claim were established by a preponderance of the evidence. *Id.* This deferential standard of review is especially important in small claims actions where trials are "informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law." *Id.* (quoting S.C.R. 8(A)).

2. Although the entry of the judgment may appear somewhat confusing in light of the claim and the evidence presented at trial, we surmise from the record that the $142 held in trust represented the remaining $100 that Gaddis had not paid of the original annual dues plus $42 from the first period in which she accrued late fees. Further, it is our understanding that the $58 dollars represented the accrued late fees from the second period in which she failed to make her scheduled monthly payments, and the $42 represent the court costs that she agreed to pay pursuant to the contract. In sum, Stardust was awarded $242.

■ We note that the Articles of Incorporation and Bylaws of a non-profit corporation constitute a contract between the corporation and its members and among the members themselves. *Lynn v. Windridge Co–Owners Assoc., Inc.*, 743 N.E.2d 305, 313 (Ind.Ct.App.2001). A party who fails to make payments as required by a contract is guilty of a breach thereof. *Henthorne v. Legacy Healthcare, Inc.*, 764 N.E.2d 751, 758 (Ind.Ct.App.2002).

■ Gaddis argues that the delinquent fee is against public policy "because the obligors on these debts can lose their homes for the sake of the payment of outrageous interest rates." Appellant's Br. p. 13. Contrary to Gaddis's assertion, the rules and regulations do not provide the Association with an automatic security interest in the home of each member of the Association. They merely inform the homeowners that the Association has the right to seek a lien against their home through the judicial process. Moreover, there is no indication in the record that Gaddis or any homeowner in Stardust Hills was in danger of losing his or her home over a potential $200 lien for unpaid dues. Thus, Gaddis has failed to demonstrate how the delinquent fee contravenes public policy.

We addressed the issue of a one percent per day late fee in *Gershin v. Demming*, 685 N.E.2d 1125 (Ind.Ct.App.1997). In that case, a landlord charged a late fee of "1% of monthly rent due, per day, including Saturday and Sunday" for unpaid rent. *Id.* at 1130–31. The tenants in that case argued that this punished them with an interest rate of 365 percent per year on unpaid rent, noting that such a rate far exceeds the maximum allowable rate for consumer credit transactions under the Uniform Consumer Credit Code. *See* Ind. Code § 24–4.5–2–201. In upholding the late fee, we noted:

the late fee is intended to compensate Landlord for the administrative expense and inconvenience associated with untimely rent, including late payment notices and additional bookkeeping, and for the loss of use of rental income. Landlords in residential leases typically have mortgage payments, real estate taxes, insurance, maintenance and other expenses required to maintain the leased property. Delinquent rent not only results in a loss of use, measured as interest, but also interrupts normal cash flow and may affect a landlord's ability to meet its operating expenses. The severity of this interruption is a function of both the amount of rent owed and the duration that rent remains past due. The greater the amount of late rent and the longer the rent remains past due, the greater the adverse impact on the landlord's business. . . . While here the total of $975.00 in late fees might seem high, it represents 75 days of late rent. This accumulation of late fees occurred only because the tenants repudiated the lease and committed an anticipatory breach. We cannot say under the circumstances of this case that such a fee is grossly disproportionate to Landlord's loss resulting from 75 days of delinquent rent or that the fee is an unenforceable penalty as a matter of law. Thus, we hold that the per diem late fee provision to the end of the lease term is not unreasonable.

*Gershin*, 685 N.E.2d at 1131.

■ The reasoning of the *Gershin* court is equally applicable here, where the late fee is charged for late payment of annual dues that pay for the maintenance of common areas and other community services. The Association was required to incur the additional expenses of late payment notices, creating a contract for installment payments of Gaddis's dues, and attorney

and court fees in attempting to enforce their agreement. The late payment and its consequential effects may interrupt the ability of the Association to pay for the maintenance of the common area and to provide other community services. As in *Gershin*, the total of the late fees may seem high—seventy-one percent of the annual dues—but the accumulation of the late fees only occurred because Gaddis breached not one, but two contractual obligations to pay her annual dues.

Moreover, the rules and regulations of the Association state · that any Member who defaults in payment of an obligation due to the Association will be responsible for all attorney fees and any other reasonable costs of collection, and Gaddis's contract for installment payments of her dues required her to pay court costs if litigation became necessary. Appellant's App. p. 5, 125. The expense of the litigation and this appeal has clearly cost the Association more than the delinquent fees charged to Gaddis. Under these circumstances, we cannot say that the delinquent fee charged here is usurious interest.

## II.  Penalty

Gaddis next contends that the delinquent fee is an unenforceable penalty. Specifically, she argues that the fee was a penalty because the Association's actual loss was disproportionate to the amount of the late fees.

■■ Initially, we note that as a general rule, issues not raised before the small claims court are not preserved for appeal. *Hochstedler v. St. Joseph County Solid Waste Mgmt. Dist.*, 770 N.E.2d 910, 917 (Ind.Ct.App.2002). As the trial court observed in its findings of fact, Gaddis did not raise the defense that the late fee was an impermissible penalty. Appellant's App. p. 9. Thus, she did not preserve this issue for appeal.

■ That said, we note that Gaddis would be unable to show that this late fee was an unenforceable penalty even if the issue had been properly preserved. The question whether a liquidated damages clause is valid, or whether it constitutes an unenforceable penalty, is a pure question of law for the court. *Gershin*, 685 N.E.2d at 1128. Moreover, we observe that "[a] typical liquidated damages provision provides for the forfeiture of a stated sum of money upon breach without proof of damages." *Id.* at 1127. "In determining whether a stipulated sum payable on a breach of contract constitutes liquidated damages or a penalty, the facts, the intention of the parties and the reasonableness of the stipulation under the circumstances of the case are all to be considered." *Id.* at 1128. If the sum sought by a liquidated damages clause is grossly disproportionate to the loss that may result from a breach of contract, we should treat the sum as a penalty rather than liquidated damages. *Rogers v. Lockard*, 767 N.E.2d 982, 991 (Ind.Ct.App.2002).

The provision at issue here, which provides for a flat rate of two dollars per day when the annual dues are not paid on time, regardless of proof of damages, clearly fits within the definition of liquidated damages. Gaddis asserts, without citation to any authority, that the Association's actual loss from the late payment can be gauged by what interest rate it might receive by placing the money in an interest-bearing account. She therefore contends that the fee of two dollars per day is "so obviously disproportionate to this amount, the failure of the court to declare it a penalty was a blatantly obvious error." Appellant's Br. p. 18. However, as we observed above, the costs of enforcing the payment of the annual dues can be high and are directly related to the two dollar per day fee. Thus, the sum sought by this liquidated

damages clause is not grossly disproportionate to the loss that may result from a breach of contract.

### CONCLUSION

In light of the above, we find that the two dollar per day delinquent fee is not usurious interest. Moreover, we find that Gaddis waived the argument that the delinquent fee is an unenforceable penalty, and that the fee could not be considered a penalty even if the argument were properly before us.

The judgment of the trial court is affirmed.

NAJAM, J., and MAY, J., concur.